NOT FOR PUBLICATION                                                    (Doc. No. 9)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____

|                                    |   |                          |
|------------------------------------|---|--------------------------|
| JASON PLATT, et al.,               | : |                          |
|                                    | : |                          |
| Plaintiffs,                        | : |                          |
|                                    | : | Civil No. 10-968 (RBK/KMW) |
| v.                                 | : |                          |
|                                    | : | **OPINION**              |
| FREEDOM MORTGAGE CORP.,            | : |                          |
|                                    | : |                          |
| Defendant.                         | : |                          |

_____

**KUGLER**, United States District Judge:

The Worker Adjustment and Retraining Notification Act ("WARN Act") and the New

Jersey Millville Dallas Airmotive Job Loss Notification Act ("NJWARN Act") require

employers to give employees 60 days written notice before implementing a "mass layoff."  As

relevant to this matter, a "mass layoff" is the termination of 50 or more employees within a 30-

day period.  Plaintiffs are twelve former employees of Defendant Freedom Mortgage Corp.

("Freedom").  They allege that Freedom terminated their employment as part of a mass layoff in

January 2010 without giving the required notice.

This matter comes before the Court pursuant to Freedom's motion to dismiss the

Complaint for failure to state a claim under Rule 12(b)(6).  Freedom argues that the Complaint

should be dismissed because, according to a "certification" from Freedom's Chief Operating

Officer, Freedom laid off only 44 of the 60 employees who left Freedom during the relevant

period.  Because Plaintiffs have specifically alleged that Freedom laid off at least 50 employees,

and because it is not proper for the Court to consider evidence extraneous to the Complaint on this pre-answer motion to dismiss, the Court denies Freedom's motion.

I.      **BACKGROUND**

Freedom is a mortgage origination company that provides various mortgage-related services. Plaintiffs were full-time employees at Freedom's Mount Laurel, New Jersey facility. All of the Plaintiffs worked for Freedom for more than six months before the layoffs in January 2010. Seven Plaintiffs worked as mortgage underwriters, three worked as loan processors, one was a junior loan processor, and one was a net branch processor. Three of the Plaintiffs were laid off on January 8, 2010, one was laid off on January 11, 2010, and eight were laid off on January 15, 2010. Freedom did not give any of the Plaintiffs 60 days written notice before terminating their employment.

According to Plaintiffs, their termination was part of a "mass layoff" at the Mount Laurel facility. (Compl. ¶ 22). Plaintiffs allege that during a thirty-day period beginning on January 8, 2010, Freedom "ordered a mass layoff" that affected "at least fifty of [Freedom's] employees as well as thirty-three (33%) of [Freedom's] workforce at the Facility, excluding part-time employees." (Compl. ¶ 23). Plaintiffs further allege that "at all relevant times [Freedom] employed more than 100 employees, excluding part-time employees, who in the aggregate worked at least 4,000 hours per week, excluding hours of overtime, within the United States." (Compl. ¶¶ 19). Based on those allegations, Plaintiffs assert that their terminations were subject to the WARN Act's 60-day notice provision and that Freedom violated the WARN Act by terminating them without providing the required notice.

In lieu of answering Plaintiffs' Complaint, Freedom moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). In support of its motion, Freedom submited a

certification from its Chief Operating Officer, Brian Simon, stating that Freedom laid off only 44 full-time employees during the relevant time-period.  Mr. Simon attached two tables to his Certification.  The first table is titled "WARN ACT 2 23 10 vs2.xls MTL Summary of # of Full Time Employee's [sic] From 9/7/09 – 5/10/10 Using 2/23/10 as the determination date for 6 months of employment" ("Table One").  It purports to list Freedom's total number of full-time employees per week from September 7, 2009 to May 10, 2010.  It shows that Freedom's workforce went from 219 to 141 during that period.  In other words, it shows that Freedom lost 78 employees or approximately 38% of its workforce.

The second table is titled "WARN ACT 2 23 10 vs2.xls – Terms Period 2" ("Table Two").  Mr. Simon asserts that Table Two is a "payroll report evidencing the staff reduction terminations" for the period September 7, 2009 to May 18, 2010.  Table Two lists 44 employees who were purportedly laid off during that period.  Mr. Simon does not say who prepared the tables nor explain the criteria used to identify the 44 employees listed on Table Two.  He also does not explain why Table One shows that Freedom lost 60 employees during the relevant time period, but Table Two identifies only 44 employees as being "laid off."[1]  Mr. Simon purports to authenticate the tables by stating that he has personal knowledge regarding their content and that they are accurate.

Based on this evidence, Freedom asserts that Plaintiffs fail to state a claim for relief because the WARN Act and the NJWARN Act apply only if an employer lays off 50 or more employees.

---

[1] Table Two covers the period from December 7, 2009 to February 26, 2010.  Table One covers the period from September 7, 2009 to May 10, 2010 and shows that Freedom lost 78 employees.  Table One also shows that Freedom lost 60 employees for the period covered by Table Two.  Thus, when viewed together, Tables One and Two show that Freedom lost 60 employees during the period when Freedom claims to have laid off only 44 employees.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  When deciding a motion to dismiss under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a claim survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making that determination, a court must engage in a two-part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Bell Atl. Corp., 550 U.S. at 545.  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 129 S. Ct. at 1950.  "Asking for plausible grounds to infer [necessary elements of a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence [in support of the claim]." <u>Bell Atl. Corp.</u>, 550 U.S. at 556.

III.   **DISCUSSION**

   **A.  Whether the Court Should Consider Mr. Simon's Certification**

   As a preliminary matter, this Court must determine whether, on this pre-answer motion to dismiss, it should consider Mr. Simon's certification and exhibits.

   Generally, courts do not consider documents extraneous to the pleadings when deciding a motion to dismiss under Rule 12(b)(6).  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997); <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[C]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record") (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990); <u>Watterson v. Page</u>, 987 F.2d 1, 3-4 (1st Cir. 1993); <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1198 (9th Cir. 1988)). However, a court may consider extraneous documents if:  (1) the parties do not dispute the document's authenticity; and (2) the "plaintiff's claims are based on the document."  <u>Pension Benefit Guar. Corp.</u>, 998 F.2d at 1196.  A plaintiff's claims are "based on the document" if the document is "integral to or explicitly relied upon in the complaint."  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d at 1426.

   The justification for this rule is that plaintiffs who properly state a claim for relief must be given fair notice and an opportunity to gather and present evidence in defense of their claims. <u>See</u> <u>id.</u> (discussing this rationale); <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991) (same).  Thus, a court can consider documents that a plaintiff references or relies on in a complaint because the plaintiff is presumed to have fair notice of those documents' contents

and authenticity.  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.  Conversely, it is inappropriate for a court to consider extraneous documents without giving the plaintiff a fair opportunity to respond to that evidence.  See Hart v. Elec. Arts, Inc., No. 09-5990, 2010 U.S. Dist. LEXIS 99622, at *10 (D.N.J. Sept. 21, 2010) (refusing to consider declarations submitted in support of motion to dismiss); Brown v. Wiener, No. 04-3442, 2005 U.S. Dist. LEXIS 15610, at *7-8 (E.D. Pa. July 6, 2005) (refusing to consider contract that was not referenced in the complaint or integral to its claims); Fosburg v. Lehigh Univ., No. 98-864, 1999 U.S. Dist. LEXIS 2833, at *6 (E.D. Pa. Mar. 4, 1999) (refusing to consider extraneous exhibits on a motion to dismiss).

It is inappropriate for the Court to consider Mr. Simon's certification and exhibits.  The Complaint does not reference or rely on the documents, nor is there any reason to presume that Plaintiffs concede the documents' authenticity and accuracy.  In fact, Plaintiffs' allegations directly contradict Mr. Simon's certification and exhibits.   Mr. Simon claims that Freedom laid off only 44 of the 60 employees that left Freedom during the relevant period, but Plaintiffs allege that Freedom laid off at least 50 of those employees.  In effect, Mr. Simon's certification is simply a denial of Plaintiffs' allegations.  It is not "integral" to Plaintiffs' Complaint, and Plaintiffs did not had a fair opportunity to respond to Mr. Simon's attestations because there has been no discovery in this matter.[2]  It would therefore be improper for the Court to dismiss Plaintiffs' Complaint at this stage based on Mr. Simon's certification and exhibits.

Moreover, evidentiary concerns presented by Mr. Simon's certification and exhibits also support this result.  First, federal law permits a party to submit a "declaration" in lieu of a sworn

---

[2] For this reason, the Court also finds that it would be inappropriate to convert Freedom's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d).  Even if the Court gave Plaintiffs notice of its intent to consider Mr. Simon's certification pursuant to Rule 12(d), Plaintiffs have not yet had an opportunity to depose Mr. Simon or obtain other evidence through discovery that may be relevant to Mr. Simon's assertions.

affidavit if the declaration contains the following attestation:  "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."  28 U.S.C. § 1746.  Rule 1:4-4 of the Rules Governing the Courts of the State of New Jersey provides that a party may submit a "certification" in lieu of a sworn affidavit if it contains the following attestation:  "I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."  N.J. Ct. R. 1:4-4.  Mr. Simon's certification contains the language provided by the Rules Governing the Courts of the State of New Jersey.  However, the New Jersey Court Rules are inapplicable in this United States District Court.  Indeed, Mr. Simon's certification does not expressly acknowledge that he is subject to penalty of perjury as provided by "the laws of the United States of America."  See 28 U.S.C. § 1746.  Thus, even if the Court were to consider Mr. Simon's certification, it is not clear that the document qualifies as a sworn statement of evidentiary value under the rules governing this Court.  See Gotlin v. Lederman, 616 F. Supp. 2d 376, 389 n. 7 (E.D.N.Y. 2009) (rejecting purported "sworn" statement from witness that did not make "reference to United States law").  But see Tirado v. Erosa, 158 F.R.D. 294, 297 n.5 (S.D.N.Y. 1994) (relying on "affirmation" prepared pursuant to state law because it substantially complied with 28 U.S.C. § 1746).

Second, Mr. Simon provides no foundation for the preparation or authenticity of Tables One and Two.  Mr. Simon does not claim that he prepared them himself or that Freedom prepared them in the ordinary course of its business.  In fact, based on their titles, the tables appear to have been prepared for purposes of complying with the WARN Act.  Thus, it is unclear whether the exhibits qualify as evidence upon which this Court could properly rely.  See Reynolds v. Dep't of the Army, No. 08-2944, 2010 U.S. Dist. LEXIS 65600, *23 (D.N.J. June

30, 2010) (holding that "the Court has its own independent obligation to ensure that the evidence introduced by the parties" is admissible and rejecting party's affidavit because it was "deficient on multiple grounds under the applicable evidentiary standards").

Given these evidentiary deficiencies, it would be improper for the Court to rely on Mr. Simon's certification and exhibits; especially because Plaintiffs had no opportunity to depose Mr. Simon regarding the basis for his assertions or to seek other discovery relevant to the compilation of Tables One and Two.[3]

## B.  Whether Plaintiffs' Complaint Fails to State a Claim

The Court must now address whether Plaintiffs' Complaint alone states a claim for relief under the WARN Act and the NJWARN Act.  "The WARN Act protects workers, their families and their communities by requiring that employers subject to the Act provide notice sixty calendar days before a plant closing or mass layoff."  Palmer v. Reese Bros., 160 Fed. Appx. 173, 175 (3d Cir. 2005); see 29 U.S.C. § 2102(a) ("An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order").  If an employer does not provide the required notice, it is liable to the affected employees for "back pay for each day of the violation."  29 U.S.C. § 2104(a)(1).

Not all employers and not all layoffs are subject to the WARN Act's notice provision. As relevant to this case, an employer is subject to the WARN Act if it employs "100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of

---

[3] The Court rejects Freedom's argument that Plaintiffs' Complaint should be dismissed because discovery will be futile.  Mr. Simon's certification and exhibits raise obvious questions regarding Freedom's layoffs that will likely require supplemental evidence.  For example, Freedom presents no evidence regarding the other sixteen employees who left the company during the relevant time period, nor does Freedom identify the criteria used to compile its list of 44 "involuntarily terminated" employees.  In light of these unanswered questions, Freedom's bald assertion that discovery will be futile is too self-serving to form the basis for dismissal of Plaintiffs' Complaint.  Plaintiffs are entitled to seek discovery regarding their claims because, as discussed below, this Court finds that Plaintiffs have sufficiently pled claims under the WARN Act and the NJWARN Act.  See Bell Atl. Corp., 550 U.S. at 555 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely").

overtime)."  29 U.S.C. § 2101(a)(1)(B).  "The term 'mass layoff' means a reduction in force

which . . . results in an employment loss at the single site of employment during any 30-day

period for: . . . (I) at least 33 percent of the employees (excluding any part-time employees); and

(II) at least 50 employees (excluding any part-time employees) . . . ."  29 U.S.C. § 2101(a)(3).

Layoffs that occur on separate occasions may be aggregated into a "mass layoff" if each set of

layoffs involves fewer workers than required by the two statutory thresholds and all layoffs occur

within any 90-day period.  See 29 U.S.C. § 2102(d).

      Like the WARN Act, the NJWARN Act requires advance notice of mass layoffs.  Under,

the NJWARN Act, a "mass layoff" is defined as "a reduction in force which . . . results in the

termination of employment at an establishment during any 30-day period . . . for 50 or more of

the full-time employees representing one-third or more of the full-time employees at the

establishment."  N.J.S.A. 34:21-2.  The NJWARN Act also provides a 90-day period for

aggregating two or more groups of layoffs.  See N.J.S.A. 34:21-2.  Thus, for purposes of

determining the applicability of the statutory notice requirement, the analysis is the same under

both the WARN Act and the NJWARN Act.

      In this case, Plaintiffs plead all facts necessary to state claims under both statutes.

Plaintiffs specifically plead that Freedom "has 100 or more full-time employees [and] and has

been operating for more than three years."  (Compl. ¶ 17).  Plaintiffs allege that "[o]n or about

January 8, 2010, January 11, 2010, and January 15, 2010, [Freedom] ordered a mass layoff at the

Facility."  (Compl. ¶ 22).  According to Plaintiff, "the mass layoff resulted in 'employment

losses' . . . for at least fifty of [Freedom's] employees as well as thirty-three (33%) of

[Freedom's] workforce at the facility, excluding part-time employees".  (Compl. ¶ 23).  Plaintiffs

also separately allege that each of them was a full-time employee of Freedom who was laid off in January 2010 as part of the mass layoff without the required sixty-day written notice.

If accepted as true, those allegations state a claim under both the WARN Act and the NJWARN Act. Plaintiffs allege facts sufficient to show that Freedom is an employer subject to the statutes' 60-day notice provision. Plaintiffs also allege facts sufficient to show that Freedom's January 2010 layoffs constitute a mass layoff within the meaning of both statutes. Additionally, each Plaintiff individually alleges that he or she was terminated as part of the January 2010 layoffs without receiving 60 days written notice. Thus, each Plaintiff has sufficiently pled a claim for relief under the statutes.

Indeed, Freedom does not take issue with the adequacy of Plaintiffs' pleading. Rather, Freedom argues that the Court should disregard Plaintiffs' allegations in light of Mr. Simon's certification and exhibits. As noted above, however, it is improper for the Court to consider Mr. Simon's certification on this motion. Moreover, even if the Court were to consider it, the Court must accept Plaintiffs' allegations as true. See Iqbal, 129 S. Ct. at 1950 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity"). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp., 550 U.S. at 555; see id. (holding that the "plausibility" analysis required at the motion to dismiss stage "does not impose a probability requirement . . . ; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). Thus, at this juncture, it is not appropriate for the Court to evaluate the veracity of Plaintiffs' factual allegations. Iqbal, 129 S. Ct. at 1950. Freedom's reliance on Mr. Simon's certification is misplaced at this stage of the litigation.

**IV.     CONCLUSION**

Because Plaintiffs have sufficiently pled claims for relief under the WARN Act and the NJWARN Act, the Court denies Freedom's motion to dismiss Plaintiffs' Complaint.  An appropriate Order shall enter.


Dated: 11/16/10                                                    /s/ Robert B. Kugler
                                                                         ROBERT B. KUGLER
                                                                         United States District Judge