**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                        :
JASON PLATT, et al.,                       :
                                                        :
            Plaintiffs,                          :
                                                        :       Civil No. 10-968 (RBK/KMW)
      v.                                           :
                                                        :       **OPINION**
FREEDOM MORTGAGE CORP.,     :
                                                        :
            Defendant.                        :
_____ :

**KUGLER**, United States District Judge:

   This matter comes before the Court pursuant to two motions for summary judgment filed on the same date, one by Defendant Freedom Mortgage Corp. ("FMC"), and the other by Plaintiffs in this matter, who are sixteen former employees of FMC. Both parties have also moved to seal certain exhibits submitted with their motion papers.

   The Worker Adjustment and Retraining Notification Act ("WARN Act") and the New Jersey Millville Dallas Airmotive Job Loss Notification Act ("NJWARN Act") require employers to give employees 60 days written notice before implementing a "mass layoff." As relevant to this matter, a "mass layoff" is the termination of 50 or more full-time employees who also constitute at least 33 percent of the workforce at a single facility within a 30-day period, or under certain circumstances, within a 90-day period. Plaintiffs allege that FMC terminated their employment as part of a mass layoff in late 2009 and early 2010 at its Mount Laurel, New Jersey facility without giving the required notice.

The parties disagree as to both the number of employees making up the total workforce at the Mount Laurel location as well as the number of full-time employees terminated for the purposes of the WARN Act and the NJWARN Act. Plaintiffs claim that 71 employees were terminated, and all count toward a "mass layoff." FMC concedes that at least 37 of these employees were terminated within the meaning of the statutes, but argues that many of the others were either not terminated, or were terminated but should not be counted toward a mass layoff for various reasons. Further, Plaintiffs contend that the number of full time employees at the beginning of the WARN period was 208 or 209, while FMC argues that the figure should be 225. Even using Plaintiffs' figures, FMC would have had to implement a mass layoff of at least 69 employees to constitute the necessary 33 percent to make out a violation of the WARN Act or the NJWARN Act. Of the 71 employees who Plaintiffs argue were terminated, Plaintiffs make no colorable argument as to whether at least eight of these were full-time employees actually part of the mass layoff. Rather, Plaintiffs attack FMC's declarations and exhibits, arguing that because some documents and declarants' names were not previously disclosed under Rule 26, they should not be considered by the Court. The Court rejects the Rule 26 argument. After excluding the eight employees discussed in this Opinion, at most 63 employees would have been part of the layoff for the purposes of the two statutes, which is too few to constitute a mass layoff. Therefore, FMC's motion for summary judgment will be **GRANTED**, and Plaintiffs' motion will be **DENIED**.

I.   BACKGROUND

FMC is a mortgage origination company that provides various mortgage-related services. Plaintiffs were full-time employees at FMC's Mount Laurel, New Jersey facility. Eleven Plaintiffs worked as mortgage underwriters, three worked as loan processors, one was a junior

loan processor, and one was a net branch processor. Four of the Plaintiffs were laid off on January 8, 2010, one was laid off on January 11, 2010, and eleven were laid off on January 15, 2010. FMC did not give any of the Plaintiffs sixty days written notice before terminating their employment.

Plaintiffs, originally consisting of twelve former employees of FMC, filed their complaint on January 23, 2010. In lieu of answering the complaint, FMC initially moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6). In support of its motion, FMC submitted a certification, including exhibits, from its Chief Operating Officer, Brian Simon, stating that FMC laid off only 44 full-time employees during the relevant time-period. Because it was inappropriate to consider Mr. Simon's certification and exhibits in the context of a motion to dismiss, and Plaintiffs pled all facts necessary to state claims under both statutes, the Court denied FMC's motion pursuant to an Order and Opinion filed on November 16, 2010. See Opinion of November 16, 2010 (ECF Doc. No. 16). Subsequently, Plaintiffs amended their complaint three times to add additional former FMC employees as parties. The third amended complaint contains the sixteen plaintiffs who are presently parties to this suit.

According to Plaintiffs, their termination was part of a mass layoff at the Mount Laurel facility. Third Am. Compl. ¶ 26. Plaintiffs allege FMC "ordered a mass layoff" that affected "at least fifty of [FMC's] employees as well as thirty-three (33%) of [FMC's] workforce at the Facility, excluding part-time employees." Id. ¶¶ 26-27. They allege that the layoff "qualifies as an event for which [Plaintiffs were] entitled to receive sixty (60) days advance written notice under the WARN Act." Id. ¶ 26. Plaintiffs further allege that "at all relevant times [FMC] employed more than 100 employees, excluding part-time employees, who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States."

3

Id. ¶ 23. Based on those allegations, Plaintiffs assert that their terminations were subject to the WARN Act's sixty-day notice provision and that FMC violated the WARN Act by terminating them without providing the required notice. They claim that, as a result, FMC is liable to them for their respective salary and other compensation, and various medical, pension and other benefits for a period of sixty days after the date of their employment loss. Id. ¶ 49. They also assert that FMC is liable for a statutory penalty of $500 per day. Id. ¶ 50.

## II. LEGAL STANDARD

### A. Summary Judgment

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushida, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must

4

at least present probative evidence from which the jury might return a verdict in his favor.  Id. at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**B.  Motion to Seal**

Local Civil Rule 5.3 governs requests to seal documents filed with the Court.  Under Rule 5.3(c)(2), a party seeking to seal documents must show: (1) the nature of the materials at issue; (2) the legitimate private or public interests which warrant the relief sought; (3) the injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to relief sought is not available.  In turn, any order or opinion on a motion to seal must make findings as to those factors.  L. Civ. R. 5.3(c)(5).  Additionally, where a party moves to seal pretrial motions of a "nondiscovery nature, the moving party must make a showing sufficient to overcome a 'presumptive right of public access.'"  Leucadia v. Applied Extrusion Tech., Inc., 998 F.2d 157, 164 (3d Cir. 1993). To overcome that presumption, a party must demonstrate that "good cause" exists for the protection of the material at issue.

Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure."  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994) (citations omitted); see Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  A party does not establish good cause by merely providing "'broad allegations of harm, unsubstantiated by specific examples of articulated reasoning.'"  Pansy, 23 F.3d at 786 (quoting Cipollone v. Liggett Grp., 785 F.2d 1108, 1121 (3d

Cir. 1986)). To prevail, the parties must make this good cause showing with respect to each document sought to be sealed. Id. at 786-87.

## III. DISCUSSION

### A. The WARN Act and NJWARN Act

"The WARN Act protects workers, their families and their communities by requiring that employers subject to the Act provide notice sixty calendar days before a plant closing or mass layoff." Palmer v. Reese Bros., 160 F. App'x. 173, 175 (3d Cir. 2005); see 29 U.S.C. § 2102(a) ("An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order"). If an employer does not provide the required notice, it is liable to the affected employees for "back pay for each day of the violation." 29 U.S.C. § 2104(a)(1)(A).

Not all employers and not all layoffs are subject to the WARN Act's notice provision. As relevant to this case, an employer is subject to the WARN Act if it employs "100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 29 U.S.C. § 2101(a)(1)(B). "The term 'mass layoff' means a reduction in force which . . . results in an employment loss at the single site of employment during any 30-day period for: . . . (I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees) . . . ." 29 U.S.C. § 2101(a)(3). Layoffs that occur on separate occasions may be aggregated into a "mass layoff" if each set of layoffs involves fewer workers than required by the two statutory thresholds and all layoffs occur within any 90-day period, and they are not the result of "separate and distinct actions and causes . . . ." 29 U.S.C. § 2102(d).

6

Like the WARN Act, the NJWARN Act requires advance notice of mass layoffs. Under the NJWARN Act, a "mass layoff" is defined as "a reduction in force which . . . results in the termination of employment at an establishment during any 30-day period . . . for 50 or more of the full-time employees representing one-third or more of the full-time employees at the establishment." N.J.S.A. 34:21-1. The NJWARN Act also provides a 90-day period for aggregating two or more groups of layoffs. See N.J.S.A. 34:21-2. Thus, for purposes of determining the applicability of the statutory notice requirement, the analysis is the same under both the WARN Act and the NJWARN Act.

B. **Facts Alleged to be in Dispute**

The parties here disagree on a number of key issues. For example, Plaintiffs seek to aggregate several groups of layoffs and individual terminations so that a 90-day period will apply, lasting from December 3, 2009 to March 3, 2010, rather than the 30-day period that applies by default. See Pl. Mot. Summ. J. at 3.[1] FMC, on the other hand, argues that the 90-day period should not apply, because aside from a significant staff reduction that occurred on January 8, 2010 and January 15, 2010, Plaintiffs have only identified isolated terminations not related to staff reduction and not subject to the WARN Act. See Def. Reply at 11-12 (ECF Doc. No. 90).

The parties also disagree as to the total number of full-time employees working at FMC's Mount Laurel location, which is significant because this number is used to calculate the 33 percent threshold that Plaintiffs must show in order to prevail.[2] Plaintiffs argue that an exhibit

---

[1] Most of the briefs submitted by Plaintiffs in connection with their motion and their opposition of FMC's motion do not contain page numbers. Where no page numbers exist, the first page of the document as it appears on the docket is designated as page 1 and all pages are numbered sequentially for the purposes of citation in this Opinion.

[2] The Court observes that the WARN Act requires that "at least 33 percent" of the employees must be terminated, while the NJWARN Act requires "one third or more." Compare 29 U.S.C. § 2101(a)(3), with N.J.S.A. 34:21-1. Using 209 employees as a basis, 69 employees is the lowest figure that would constitute "at least 33 percent," while it would take 70 employees to constitute "one third or more." While taking note of this minor mathematical distinction between the federal and state acts, the Court will use the 33 percent language in the course of this Opinion, observing that the outcome is unaffected by the distinction.

FMC submitted with its motion to dismiss indicated that FMC had 209 full-time employees the week of November 30, 2009, and 208 the week of December 7, 2009. See Pl. Reply at 8 (ECF Doc. No. 84). Although they do not commit to which figure should be used, it appears that November 30, 2009 was the Monday of the week during which Plaintiffs seek to start the 90-day window, and December 7, 2009 was the following Monday. FMC provided evidence that there were 225 full-time employees on November 30, 2009, and they argue that this figure should be used for the 33 percent calculation. Def. Reply at 1.[3]

The heart of the dispute between the parties for the purposes of this motion lies in the number of employees terminated by FMC that should count toward determining whether a "mass layoff" took place within the meaning of the WARN Act. Plaintiffs contend that 71 employees were terminated between December 3, 2009 and March 3, 2010. Pl. Reply at 7-8. FMC concedes that it terminated 10 employees on January 8, 2010, and 25 more on January 15, 2010. It also concedes that two other employees were involuntarily terminated within thirty days of these layoffs, for a total of 37. Def. Mot. Summ. J. at 2-3.[4] Plaintiffs, on the other hand, list 71

---

[3] FMC indicates that the table submitted with their motion to dismiss included only employees who had worked for FMC for a minimum of six months as of February 23, 2010. Def. Reply at 5. The material currently submitted, they argue, is more accurate, because it starts with a list every employee working at FMC's Mount Laurel location on November 9, 2009. Id. FMC then evidently adjusted for employees who were not employed full-time to arrive at the 225 figure for November 30, 2009. See id.; Decl. of Jill Smith Ex. 2. FMC also included pay statements for all employees in support of their argument. See Supp. Reply Decl. of Jill Smith Ex. A1-A3.

[4] Plaintiffs point out that pursuant to its motion to dismiss, FMC earlier conceded that 44 employees were terminated, a difference of seven from its current position. In its motion to dismiss, FMC did submit an exhibit that concedes the 37 terminations that it is currently conceding, in addition to seven other employees who are currently not being conceded. See Def. Mot. to Dismiss at 2-3 (ECF Doc. No. 9). The seven additional employees include Jason Platt, Renee Stutzenburg, and Amanda Fox, who FMC now argues do not count because they were rehired within six months. See Def. Opp'n at 6 (ECF Doc. No. 75). It also includes Crystal Swander and John McNair, whose terminations are allegedly not part of the "mass layoff" for other reasons. Def. Mot. to Dismiss at 5-6; Def. Reply at 8. The other two employees included on the list when FMC filed its motion to dismiss, but did not concede when it filed its summary judgment motion, appear to be Andrew Kovacs and Denise LeFlore. It is not clear why FMC conceded the layoff of these two employees pursuant to its motion to dismiss but does not presently concede their terminations. The Court also notes that when responding to Plaintiff's motion, FMC indicated that 39 employees were terminated during the relevant time period, a difference of two from the number it indicated in its own affirmative motion. See Def. Opp'n at 5. It seems that the two employees represented by the difference may be Kovacs and LeFlore. Although FMC does not explicitly indicate the reason for the difference, it appears that it

8

individual employees that they argue were terminated between December 3, 2009 and March 3, 2010. Pl. Mot. Summ. J. at 4-16. Defendants attack the disputed terminations on a number of grounds, including that certain of these employees should not count because they were re-hired within six months, were part-time employees, were employed for less than six months at the time of termination, did not work at the Mount Laurel location,[5] were terminated for cause for specific reasons and not pursuant to a staff reduction, resigned, or were terminated out of the 90-day window. Def. Opp'n at 5-12.

Because no issue of material fact exists as to whether some of the 71 employees listed by Plaintiffs were part of a mass layoff, the Court will assume for the purposes of this Opinion that Plaintiffs are correct in applying the 90-day window, and that they are also correct as to the number of full-time employees working in Mount Laurel at the beginning of the 90-day period. The Court thus assumes that there were 209 full-time employees on December 3, 2009, which would require the mass layoff of at least 69 employees in order to constitute a violation of federal or state law.[6]

---

may be conceding 37 layoffs if a 30-day period is used, and 39 layoffs if a 90-day period is used, with Kovacs and LeFlore as the additional employees in the latter total.

[5] Four terminated employees apparently worked at FMC's Turnersville and West Berlin braches. See Def. Reply at 12-13. The parties each cite law which they believe supports their position as to whether these facilities, together with Mount Laurel, constitute a single site of employment. See id.; Pl. Reply at 21. Although the parties did not raise this issue, it appears that if these four employees were to be included as part of a mass layoff at a single site, they would also have to be included in the total number of full-time employees, raising the number of full-time employees to at least 213. These four employees do not appear to be included in any list of all Mount Laurel employees submitted by either party. See Reply Decl. of Jill Smith Ex. 3 (ECF Doc. No. 85). It would be nonsensical to include them, for purposes of the percentage calculation, in a group making up 33 percent of a larger group of which they are not a part. See Def. Reply Ex. A1-A3 (ECF Doc. No. 91); Supp. Reply Decl. of Jill Smith Ex. B (ECF Doc. No. 90) (list of employees and pay statements for all FMC Mount Laurel employees, which does not include the four employees working out of the other branches).

[6] This figure is used because, although Plaintiffs argue that the figure should be 208 or 209, they present no reason why it should be 208 instead of 209. Pl. Reply at 1. It appears more logical to use the figure from the beginning of the week during which the first employee was allegedly terminated, instead of the figure from the following Monday, which in all likelihood is lower by one due to that very termination.

Among the employees who are alleged to have been part of the "mass layoff" are Emmanuel Jacob, Robert McBride, Patrick Whelan, and John McNair. See Pl. Mot. Summ. J. at 7, 15-16. Plaintiffs evidently obtained documents related to the former three thorough a subpoena directed at Automatic Data Processing ("ADP"), which is a payroll company that provides payroll services to FMC. Id. at 15. FMC also submitted the names of Jacob, McBride, and Whelan to Plaintiffs pursuant to a discovery request, indicating that they resigned voluntarily. See Pl. Reply Exs. H, K (ECF Doc. No. 87). The ADP records obtained by Plaintiffs show that these three individuals were terminated from employment with FMC on three separate dates within the 90-day window at issue. Pl. Mot. Summ. J. Ex. S. Based upon the records submitted by ADP, Plaintiffs posit that these persons "although laid off, chose not to file for unemployment." Id. FMC, however, continues to maintain that all three employees voluntarily resigned. Def. Opp'n at 11. FMC has also now submitted declarations to this effect, along with documents as exhibits showing that these employees resigned, including documents submitted to the New Jersey Department of Labor ("NJDOL"), and in the case of McBride, a letter signed by McBride announcing his resignation to his supervisor. See Decl. of Wayne Hansen ¶ 15, Ex. 8 (ECF Doc. No. 76); Decl. of Jill Smith ¶ 8, Ex. 13 (ECF Doc. No. 75); Decl. of Mark Burgard ¶ 8, Ex. 1 (ECF Doc. No. 78).

With respect to McNair, FMC has submitted a declaration indicating that he was a part-time employee who worked less than 20 hours per week in the year prior to his termination. Supp. Decl. of Jill Smith at 1 (ECF Doc. No. 80). As proof of his part-time status, FMC has also submitted copies of McNair's pay statements, an employment offer letter indicating that his job would be part-time, and a copy of his 2009 W-2 form. Id. Ex. A. Part-time employees are not covered by the WARN Act or NJ WARN Act, and Plaintiffs themselves strenuously argue

10

against the inclusion of any part-time employees in the total count of employees. See Pl. Sur-Reply at 7-8. Plaintiffs make no counter-argument with respect to these four employees except that FMC's exhibits and declarations should not be admitted due to alleged violations of Federal Rule of Civil Procedure 26. Id. at 12-14.

Four other employees who are alleged by Plaintiffs to have been part of the mass layoff are Derrick Futch, Matthew Weist, Christian Curran, and Gwendolyn Milstein. See Pl. Mot. Summ. J. at 10-11. As evidence of Curran and Milstein being laid off, Plaintiffs initially pointed to e-mails obtained through discovery including Curran and Milstein in a list of employees to be laid off. Id. Ex. K. They also obtained letters drafted to these employees indicating that they were being laid off. Id. FMC, however, indicates that although these two employees were listed in the e-mails as "potential employee[s] to be terminated," they were not in fact terminated during the relevant time period. FMC Reply at 14. FMC includes a declaration and exhibits indicating that Curran resigned on June 11, 2010, and Milstein was employed by FMC until February 11, 2011, both dates outside of the 90-day window applied by Plaintiffs. See Decl. of Jill Smith ¶ 7, Exs. 11-12. The evidence submitted by FMC includes an e-mail from Curran dated June 9, 2010 announcing her resignation. Id. Ex. 11.

With respect to Futch and Weist, Plaintiffs point to documents subpoenaed from the NJDOL that they believe indicate that these employees were terminated within the 90-day mass layoff period. See Pl. Mot. Summ. J. Ex. M. FMC, however, has shown that Futch was terminated on February 6, 2009, and Weist resigned on April 17, 2009, well before the mass layoff period.[7] See Decl. of Jill Smith ¶ 7, Ex. 10; Decl. of Mark Burgard ¶ 9, Ex. 2. In its Sur-

---

[7] Because their employment was terminated prior to the period in question here, the same principle would apply as explained in footnote 5. Because Futch and Weist are included neither in the master list of employees, nor the ADP payroll records for November 2009, if they were to be included in the total of laid off employees, they would also need to be included in the total number of FMC employees working in Mount Laurel.

11

Reply, Plaintiffs summarized their arguments with respect to each of the employees who FMC claims did not suffer a layoff within the meaning of WARN and NJWARN, including Futch, Weist, Milstein, and Curran. Pl Sur-Reply at 11-14. Plaintiffs set forth no counter-argument as to any of the eight employees discussed in this section except for the alleged Rule 26 discovery violations by FMC. Id. at 12. Therefore, unless the Court accepts Plaintiffs' arguments related to alleged discovery misconduct, Plaintiffs are unable to demonstrate that any rational finder of fact would find that Jacob, McBride, Whelan, McNair, Futch, Weist, Curran or Milstein was part of a "mass layoff" pursuant to the WARN Act or NJWARN Act.

### C. Rule 26 Requirements

Voluntary disclosure requirements until Rule 26(a) are clear. With respect to the individuals relevant to this action, the rule provides as follows:

> (1) Initial Disclosure
> (A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
> (i) The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed. R. Civ. P. 26(a). The purpose of voluntary disclosure is to streamline discovery and to avoid "undue time and expense spent on obtaining undisputedly relevant discovery." Tarlton v. Cumberland Cnty. Corr. Facility, 192 F.R.D. 165, 168-69 (D.N.J. 2000). Voluntary disclosure also serves to prevent "a party from improperly withholding relevant documents on the grounds that the opposing party has not specifically asked for them." Id. at 169.

Litigants are warned not to "indulge in gamesmanship with respect to the disclosure obligations." Advisory Committee Notes, Rule 26(a). To counteract such gamesmanship, Rule 37(c) provides courts with broad latitude in fashioning an appropriate sanction for failure to provide the information required under Rule 26(a):

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c). This provision is self-executing; there is no need for a litigant to make a motion to compel. Advisory Committee Notes, Fed. R. Civ. P. 37(c). Nor does the imposition of a sanction under this provision require a violation of a court order as a prerequisite.

Here, Plaintiff argues that the declarations and exhibits submitted by FMC in its motion papers may not be considered because some of the declarants were not identified in discovery or in Rule 26 disclosures, and the exhibits relevant to certain disputed employees were not produced during discovery. Pl. Reply at 10.

The Court does not find any discovery violation with respect to the documents FMC submitted related to the eight employees discussed in this Opinion. FMC was not initially required to voluntarily disclose documents related to employees who were <u>not</u> full-time employees laid off during the 90 day period applied by Plaintiffs. Prior to an allegation that certain specific employees were part of the layoff, FMC would have no way of knowing that documents related to employees who voluntarily resigned, were terminated at a different

13

time, or worked part-time would be relevant "to support its claims or defenses." Fed. R. Civ. P. 26(a)(1). To hold that FMC was required to make such disclosures under Rule 26 would potentially mean that they would have had to turn over documents related to any person who has ever left employment with FMC, as they would never know if Plaintiffs might incorrectly claim that some employee who left for some other reason or at some other time was part of the mass layoff. The Court is unaware of any indication by Plaintiffs that they intended to allege that Jacob, McBride, Whelan, McNair, Curran, Milstein, Futch or Weist were part of the mass layoff prior to their inclusion in the instant motion for summary judgment, and thus FMC had no obligation during discovery to provide documents relevant to these employees under Rule 26.

Further, although Plaintiffs learned the names of each of these employees during discovery, there is nothing in the record showing that Plaintiffs sought additional discovery specific to any of them, yet did not receive it. If Plaintiffs were not satisfied that McBride, Whelan and McNair resigned on their own, for example, they could have made a specific discovery request for documents related to their resignations. They could have done the same if they believed that information was being withheld about any of the 71 individuals they identified as part of the mass layoff, or they could have filed a discovery motion prior to filing their dispositive motion. See Def. Sur-Reply at 3. Therefore, the Court is unable to find that the documents related to these individuals were subject to Rule 26, or otherwise excludable due to any discovery misconduct.

Plaintiffs' objection to certain declarants also fails. With respect to the eight employees discussed in this Opinion, Jill Smith is the declarant who indicates that McNair, McBride, Futch, Curran and Milstein were not part of a mass layoff. Wayne Hansen is the declarant who

provides information about Jacob's departure, and Mark Burgard provides information about Weist and Whelan. Jill Smith was named in FMC's Rule 26 disclosure, and was also deposed by Plaintiffs. See Pl. Reply Ex. F (ECF Doc. No. 87); Pl. Mot. Summ. J. Ex. P.

The names of Burgard and Hansen were not included in FMC's initial Rule 26 disclosure. See Pl. Reply Ex. F. However, FMC did indicate in that letter that in addition to those whose names were listed, persons having discoverable information included "[a]ll such other persons whose identities are divulged in written discovery responses, subpoenas, depositions or otherwise." Id. With respect to its original Rule 26 obligations, the Court finds no misconduct in omitting the names of Burgard and Hansen, for the same reason that documents related to employees not part of the layoff did not have to be disclosed at that time. Further, because their names were later disclosed, Plaintiffs cannot show that they were harmed by any omission. Plaintiffs indicate that several declarations were from "employees of Defendant who were never identified in discovery or Rule 26 disclosures . . . ." Pl. Sur-Reply at 11. It is unclear which declaration Plaintiffs include in this allegation, but they cannot claim to have never known about Burgard or Hansen. In response to an interrogatory request seeking the name of every person who was terminated from employment for any reason between December 1, 2009 and March 15, 2010, and the names of the those involved in the decision making process for each, FMC produced a table that included the names of Hansen and Burgard as the supervisors of some of the terminated employees—but not of any of the employees who were terminated due to "staff reduction." Pl. Reply Ex. G (ECF Doc. No. 87). This discovery disclosure satisfied FMC's Rule 26 obligation with respect to Hansen and Burgard. The Court thus finds that no basis exists to exclude the declarations of Smith, Hansen, or Burgard on account of alleged violations of the rules governing discovery.

Finally, even if the Court were to refuse to consider FMC's declarations and documents, as Plaintiffs argue, it is not clear that a dispute of material fact exists as to some of these former employees. With respect to Jacob, McBride and Whelan, the only evidence in the record that Plaintiffs point to supporting their claim that these employees were part of the mass layoff is ADP records that show that they ceased working at FMC on dates between December 2009 and March 2010. Showing that the employees stopped working at FMC is insufficient to show that they were part of a "reduction in force" by the employer. The same problem applies to the documents obtained from NJDOL. At the summary judgment stage, "mere allegations" are insufficient to survive, and that is all that Plaintiffs have produced with respect to these individuals. See Anderson, 477 U.S. at 248, 256. When the non-moving party fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. Celotex Corp., 477 U.S. at 322. In arguing that "these employees' terminations cannot be excluded" due to the alleged discovery violations, Plaintiffs fail to appreciate that they have the burden of proof at trial. Pl. Sur-Reply at 12. If Plaintiffs can produce no more than allegations regarding certain employees, there is nothing to "exclude." The ADP and NJDOL records are insufficient to "establish the existence of" an essential element–that these employees were actually laid off, regardless of whether FMC's declarations and exhibits are admissible. Similarly, Plaintiffs do not point to a shred of evidence indicating that McNair was a full-time employee, so the Court fails to see how Plaintiff could make a sufficient showing of that required element at trial. See 29 U.S.C. § 2101(a)(3); N.J.S.A. 34:21-2. It appears undisputed and well-documented by the exhibits

16

that McNair was a part-time employee, which is evidently why Plaintiffs resorted to claiming that a Rule 26 violation took place.[8]

Because the Court rejects Plaintiffs' Rule 26 arguments with respect to the eight employees discussed in section III.B, and because Plaintiffs have identified no material facts in dispute that could show that these eight employees were part of a "mass layoff" as defined by the WARN Act and NJWARN Act, the Court must grant summary judgment to FMC.

**D. Motion to Seal**

Plaintiffs have moved to seal exhibits K, M, N, P, Q, R and S, to their motion for summary judgment.[9] Plaintiffs argues that these documents "contain irrelevant personal identifying information and highly confidential information about Plaintiffs and various non-parties." Pl. Mot. to Seal at 6. The personal information includes their Social Security numbers, home addresses, dates of birth, telephone numbers, and other confidential information. Id. Plaintiffs also seek to seal exhibits bearing the same letters filed with their opposition to Defendants' motion for summary judgment.[10] Pl. Sec. Mot. to Seal at 6. The two groups of documents that Plaintiffs seek to seal appear to be identical, although filed with two different briefs.

FMC has moved to seal Exhibits A-1, A-2, and A-3 to the supplemental reply declaration of Jill Smith.[11] Def. Mot. to Seal at 1. FMC indicates that these exhibits contain wage, salary,

---

[8] In its moving papers, Plaintiffs also point to the fact that McNair was listed by FMC as one of 44 employees that it admitted it laid off in a certification submitted with its earlier motion to dismiss. See Pl. Mot. Summ. J. at 7. However, for the reasons discussed in this Opinion, there is now no colorable dispute of fact as to whether McNair was a full-time employee. There is ample evidence that he worked for FMC part-time and thus is not subject to the WARN Act. Further, even if McNair were not deducted from Plaintiffs' list of 71 employees allegedly laid off, Plaintiffs could not meet their burden of showing that at least 33 percent of the Mount Laurel workforce was laid off.

[9] These exhibits are located on the Docket as entries 62, 63, and 64.

[10] These exhibits are located on the Docket as entry 74, attachments 15, 17, 18, 21, 22, 23, 24, and 29.

[11] These exhibits are located on the Docket as entry 91.

17

tax and other personal information for every FMC employee in Mount Laurel as of November 13, 2009. Id. at 1-2. They indicate that disclosure would harm numerous employees who are not involved in this lawsuit, and there is no public need for the documents. Id. at 2.

After reviewing the materials that the parties seek to seal, the Court finds that both parties have met their burden of establishing that the exhibits should be sealed because they have satisfied each element required by Rule 5.3(c)(2). In addition to describing the nature of the materials, as discussed above, the parties have shown that a legitimate private interest exists in sealing the materials. The employees whose personal information is contained in these exhibits have a clear interest in not having their addresses, Social Security numbers, salaries, and other personal information publicly disclosed. It is clear that due to the privacy expectations of these individuals, especially those who are not parties, injury would result if they were made publicly available. Further, there is no less restrictive alternative available to protect the privacy of these employees and former employees. Little public interest is served by disclosing this information, and irreparable harm to the Plaintiffs and non-parties would result if this information were freely accessible to the public. The parties have also shown that "good cause" exists, by making a particularized showing that disclosure would cause "a clearly defined and serious injury to the party seeking closure." Pansy, 23 F.3d at 786. Accordingly, the strong presumption of public access is overcome with respect to these documents, and the Court will grant these motions to seal.

**IV. CONCLUSION**

Because Plaintiffs have not made a showing that would support a conclusion by a reasonable finder of fact that FMC laid of 33 percent or more of its full-time workforce at one

location within the statutory period governed by the WARN Act or NJWARN Act, FMC's motion for summary judgment will be **GRANTED**, and Plaintiffs' motion for summary judgment will be **DENIED**. All motions to seal will be **GRANTED**. An appropriate Order shall enter.

Dated: 12/10/2013                                              /s/ Robert B. Kugler
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge